IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JOANN CHATWOOD                                                                         PLAINTIFF

V.                                         4:10CV00169 JMM

STATE OF ARKANSAS, DEPARTMENT
OF FINANCE AND ADMINISTRATION,
and DEPARTMENT OF WORKFORCE
SERVICES                                                                              DEFENDANTS

## ORDER

Pending is the Motion for Summary Judgment filed by the Defendants. The Plaintiff has filed a response and the Defendants have filed a reply. For the reasons set forth below, the Motion is granted in part and denied in part.

I.   Facts

Plaintiff JoAnn Chatwood is an African American female. Plaintiff is a full-time permanent employee of the Department of Workforce Services ("DWS") and has been since 1986. DWS is an agency of the State of Arkansas. In her current position as Workforce Investment Act/ADMIN Cash Supervisor, Plaintiff supervises ten (10) employees and is responsible for approximately $133 million dollars in grant money. On March 12, 2009, Plaintiff made a formal request for a salary increase to her supervisor Bryan Hicks. Hicks forwarded the request to DWS Director Artee Williams.

Three months later, Denise Baker, one of the employees under Plaintiff's supervision, was given an increase in her hourly rate of pay from $13 to $24 per hour. Ms. Baker, a white female, is a part-time intermittent employee who has worked in the Financial Management Section of DWS since June of 2007. Ms. Baker's pay increase was authorized by Director Williams on June 23, 2009.

On July 1, 2009, Arkansas Act 688 became effective. Act 688 implemented a new classification and compensation plan for state employees resulting from a statewide study conducted by the Office of Personnel Management ("OPM"). As a result of Act 688, Plaintiff's position was upgraded and she received a salary increase of 3.5%. Pursuant to the Act, part-time positions also fell under the state classification and compensation plan which is administered by the OPM.. *See* Ark. Code Ann. §§ 21-5-224, *et seq*.

Upon learning of Ms. Baker's pay raise, Plaintiff complained to her supervisors and to Freddy Jacobs, Equal Opportunity Manager for DWS. Plaintiff complained that although she supervised Ms. Baker, Ms. Baker would be paid more than Plaintiff. Plaintiff's prior request for a raise was submitted by Director Williams to the OPM for review on July 29, 2009. The request was denied by OPM on September 4, 2009.

Plaintiff filed a Charge with the EEOC on December 11, 2009 alleging race discrimination by the DWS. After receiving her right to sue letter, Plaintiff filed suit against the State of Arkansas, DWS, and the Department of Finance and Administration ("DFA") alleging race and age discrimination. Plaintiff has now withdrawn her claims against the State of Arkansas and her claim for age discrimination.

II.     Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine

>       factual issues that properly can be resolved only by a finder of fact
>       because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

    III.   Discussion of the Law

    A.   Department of Finance and Administration

Plaintiff filed suit under Title VII alleging race discrimination against the DFA. Title VII prohibits an "employer" from discrimination against an individual with respect to their

compensation, terms, conditions, or privileges of employment, based upon the individual's race, color, religion, sex, or national origin. 42 U.S.C. 2000e-2. Plaintiff has failed to prove that DFA is her employer. The Defendants have provided an affidavit from Kay Barnhill Terry, State Personnel Administrator of the OPM, wherein she states that Plaintiff is not, and never has been, an employee of the DFA. Artee Williams, Director of DWS, states in his affidavit that Plaintiff is employed by DWS and that DWS is not a part of the DFA. Therefore, the Court finds that DFA is not Plaintiff's employer and, thus, cannot be sued by Plaintiff under Title VII.

      B.    <u>Title VII Race Discrimination Claim Against DWS</u>

The Court uses the familiar *McDonnell Douglas* burden-shifting framework when analyzing an employment discrimination claim based upon race. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed. 2d 668 (1973). The plaintiff must first establish a prima facie case of race discrimination. If the plaintiff is able to do so, the burden shifts to the defendant to rebut the presumption by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *Young v. Warner-Jenkinson Co., Inc.,* 152 F.3d 1018, 1021 (8th Cir. 1998). If the defendant is able to articulate a legitimate, nondiscriminatory reason, then the plaintiff must show that the proffered reason is merely a pretext for discrimination. *Rose-Maston v. NME Hosp., Inc.,* 133 F.3d 1104, 1107 (8th Cir. 1998).

In order to prove a prima facie case of race discrimination, the plaintiff must show that (1) she is a member of a protected class; (2) she was meeting her employer's legitimate job expectations; (3) she was subjected to an adverse employment action; and (4) similarly situated employees who are not members of the protected class received different treatment. *Jackson v. United Parcel Service,* 548 F.3d 1137, 1140 (8th Cir. 2008). "To satisfy the usual fourth element

of a prima facie case-that the plaintiff was treated differently than other similarly-situated comparators-a plaintiff may also demonstrate that the facts surrounding [her] termination permit an inference of discrimination." *Jones v. Ark. Dept. Of Workforce Servs.,* 2009 WL 481876 (E.D. Ark. 2009) (citing *Zhuang v. Datacard Corp.*, 414 F.3d 849, 854 (8th Cir. 2005)). "'The burden of establishing a prima facie case of disparate treatment is not onerous.'" *Torgerson v. City of Rochester,* 2011 WL 2135636, 11 (8th Cir. 2011) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

It is undisputed that Plaintiff is a member of a protected class and that she was, and continues to, meet DWS's expectations. DWS argues that Plaintiff has not been subjected to an adverse employment action and that she has not identified similarly situated employees who have been treated more favorably. The Court will assume that DWS's failure to provide a pay raise to Plaintiff was an adverse action under the circumstances of this case. *See e.g., Ledbetter v. Alltel Corp. Servs., Inc.,* 437 F.3d 717 (8th Cir. 2006)*; Davis v. KARK-TV, Inc.,*421 F.3d 699, 705 (8th Cir. 2005). As for the forth factor, Plaintiff has named several white employees who have been promoted and/or received pay raises far in excess of what she has received. This factor is further bolstered by the memorandum dated August 22, 2008, from Freddy Jacobs, Equal Opportunity Manager, to Director Williams and Mr. Jacob's affidavit. (Pl's Ex. 14 and 18). In the memorandum, Jacobs states:

> . . . I have noted and I must inform you that you have approved more requests for special entry rates than all of the previous Directors combined during my 35 years of employment. I should also inform you that 99% of these requests that you have approved are for white employees.

(Pl.'s Ex. 14). Therefore, Plaintiff has presented a prima facie case of race discrimination.

DWS has stated a legitimate, nondiscriminatory reason for its failure to increase

Plaintiff's salary: DWS did not have the authority to do so.  Plaintiff claims however, that DWS has alternate ways of providing salary increases to its employees.  This theory is supported by the affidavit of Freddy Jacobs.  (Pl.'s Ex. 18).

> The Director has always maintained a number of unfilled positions, both classified and unclassified, within the personnel department, which is at his discretion to use if necessary.  Since working under his directorship from March 2004, I have seen Mr. Williams use these positions to increase/adjust certain employees' salaries.  This is the process or method utilized when Mr. Williams did not want to submit a request to the Office of Personnel Management (OPM) for approval.

*Id.* at p. 12.

* * *

> I have read Mr. Williams' Affidavit where he stated that he had done everything he could to get an increase in Ms. Chatwood's salary. I do not agree with that statement.  There have been many classified position[s] available from April 09 to the time I retired on June 30, 2010, in which Mr. Williams could, in my opinion, use to give Ms. Chatwood a salary increase.  This is based on prior practice of Mr. Williams giving white employees salary increases.

*Id.* at p. 14.

* * *

> Since Mr. Williams became Director, he selectively approves some selections, mostly white employees, while he sends other[s] up the line for review, prior to his approval.

*Id.* at p. 13.

This evidence is sufficient to create a genuine issue of material fact as to whether DWS's articulated reason for its failure to increase Plaintiff's pay is a mere pretext for intentional race discrimination.  *Jones*, 2009 WL 481876, at 4 ("The same evidence that permits an inference of discrimination sufficient to establish a prima facie case also creates an issue of fact as to whether Workforce Services' articulated reason is a mere pretext.")

IV.     Conclusion

For these reasons, the Defendants' Motion for Summary Judgment (Docket # 32) is DENIED as to Plaintiff's Title VII race discrimination claim against the Department of Workforce Services.  Defendants' Motion for Summary Judgement (Docket # 32) is GRANTED as to Plaintiff's claims against the Arkansas Department of Finance and Administration.  Plaintiff has voluntarily dismissed her claims against the State of Arkansas and her claim for age discrimination.

Defendant's Motion for Continuance of Trial Date (Docket # 52) is GRANTED.  A new trial date will be set by separate order.

IT IS SO ORDERED this 6th day of July, 2011.

_____
James M. Moody
United States District Judge